Nin, Demandante y Apelado, v. Rucalleda et al., Demandados y Apelantes.

Apelación procedente de la Corte de Distrito de Mayagüez en pleito sobre servidumbre de paso e *injunction.*

No. 2091.—Resuelto en junio 1, 1920.

Servidumbre de Paso—Finca aislada de Vías Públicas—Salida a Vías Públicas.—Debe estimarse que un predio no tiene salida a camino público, no solo cuando así es absolutamente, sino cuando carece de una bastante segura y practicable. Podría decirse que el esquema de la servidumbre de paso debe ser una recta—distancia más corta—entre el camino público y el predio dominante, modificada y adaptada por las exigencias del menor daño posible, y teniendo en cuenta que el dueño del predio dominante tiene derecho a pedirla o a exigirla en consonancia con las exigencias y conveniencias de su fundo. Así, pues, el dueño de un predio situado entre un camino vecinal o municipal y una carretera insular tiene derecho a exigir salida directa a ésta si tal salida es la más natural y conveniente al predio dominante.

Id.—Indemnización de Daños y Perjuicios.—Habiéndose señalado como error de la corte de distrito el haber fijado en veinte dólares anuales la indemnización que los demandantes deberían pagar a los demandados como pago de daños y perjuicios por la servidumbre de paso impuesta sobre el predio sirviente, *se resolvió:* que aunque la forma en que se estimaron los daños es algo inusitada, no habiéndose demostrado perjuicio ni habiéndose hecho gestión para que la corte inferior modificara su sentencia previa audiencia de más prueba, la importancia de la cuestión no justifica la devolución del caso.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. J. Sabater.*

Abogados del apelado: *Sres. Benet & Souffront.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

El demandante, en su carácter de dueño de una hacienda de café denominada "San Carlos," estableció demanda contra los demandados como dueños de una finca colindante llamada "Paz", y obtuvo sentencia a su favor por la que se establecía una servidumbre de paso por la finca de los demandados, consistente en el uso ilimitado de un camino que existe en la actualidad y que atraviesa la referida finca, hasta llegar a la carretera que conduce de Mayagüez a Maricao y Las Marías. La sentencia declaraba también perpetuo y definitivo el *injunction* preliminar decretado y ordenaba que los demandados y los posteriores dueños del predio sirviente recobraran del demandante o de los posteriores dueños de la hacienda "San Carlos", la suma de veinte dólares por anualidades adelantadas por concepto de indemnización por el uso y derecho de servidumbre así establecidos.

El demandante alegó, entre otras cosas, que su finca estaba enclavada en otras, entre ellas la de los demandados y se encontraba aislada de toda vía pública; que desde tiempos inmemoriales la finca "San Carlos" había usado como salida para sus cosechas y productos y como medio de salida para la carretera arriba descrita, un camino que atravesando la hacienda "Paz", empalmaba con la carretera en el kilómetro 12 y medio; y que sin tal derecho de paso, o algún otro camino por la finca de los demandados, el demandante perdería gran parte de sus cosechas y su finca depreciaría grandemente.

Los demandados negaron el aislamiento de la hacienda "San Carlos" y alegaron que dicho predio tenía cuatro caminos más por los cuales podían ser transportadas sus cosechas.

La corte inferior no solamente llegó a la conclusión general de que el demandante había establecido las alegaciones

de su demanda, sino que también declaró probados más específicamente los hechos que a continuación se refieren:

"La prueba practicada incluyendo la inspección ocular demostró claramente a la corte que la hacienda "San Carlos" perteneciente al demandante se encuentra aislada de toda vía pública, pues el único camino que había estado usando por más de veinte años el demandante, era el que saliendo de los establecimientos de la hacienda "San Carlos" cruza por la hacienda "Paz" de los demandados hasta llegar a la carretera, cuyo uso le fué prohibido por los demandados.

"Este camino es indudablemente la vía más corta, práctica y segura que puede servir de salida y que ha servido siempre a la hacienda "San Carlos" para llegar a la carretera extrayendo por el mismo sus cosechas y productos. Existe otro camino de finca que saliendo desde los establecimientos de la hacienda "San Carlos," atraviesa a ésta y llega a otro camino también de finca el cual atravesando terrenos de la hacienda "San Carlos" y de la hacienda "Triunfo" de la Sucesión Martínez sigue en esa forma en dirección Oeste hasta que después de atravesar terrenos pertenecientes a la Sucesión Surra en una extensión como de medio kilómetro empalma luego en terrenos de don Carlos Sabater con el camino vecinal denominado de Río Cañas hasta salir a la carretera.

"La corte, después de la inspección ocular de este camino llegó a las siguientes conclusiones:

"*Primero:* Que el demandante no tiene derecho al uso de todo ese camino hasta llegar al camino vecinal de Río Cañas, puesto que el mismo atraviesa por terrenos que no pertenecen a la hacienda "San Carlos" ni son del demandante no existiendo ninguna servidumbre a favor de la hacienda "San Carlos" ni del demandante para el uso de dicho camino.

"*Segundo:* Que dicho camino no es una vía suficientemente practicable y segura para poder el demandante en todo tiempo extraer a través del mismo las cosechas de la hacienda San Carlos incluyendo los frutos menores de ésta ventajosamente.

"*Tercero:* El camino vecinal de Río Cañas hasta salir a la carretera en su kilómetro ocho y medio no es de tal naturaleza que responda a las necesidades del tráfico y conducción del fruto, pues por el mismo solamente puede conducirse frutos haciendo uso de bestias de cargas y a juzgar por las condiciones en que estaba, el camino después de tres o cuatro meses de seca, es indudable que en tiempo de lluvia ha de resultar extremadamente dificultoso el con-

ducir frutos a través del mismo, pues lejos de ser un camino afirmado se encuentra lleno de grandes sanjones y "baches extensos."

"*Cuarto:* Que una bestia cargada a través de dicho camino necesitaría alrededor de dos horas por lo menos, saliendo desde los establecimientos de la hacienda "San Carlos" del demandante hasta llegar a la carretera, lo que debido al costo de esa clase de transporte de frutos en los campos de Puerto Rico, necesariamente habría de causar grandes pérdidas al demandante en la extracción de todas sus cosechas, pero especialmente en la de frutos menores, tales como guineos, chinas, etc., frutos que seguramente no pagarían los gastos de transporte por lo que habían de perder en casi su totalidad.

"*Quinto:* Que durante la temporada de lluvias el río denominado Cañas necesariamente y en muchas ocasiones ha de interrumpir por varias horas el tránsito por dicho camino, pues en tiempo de seca o sea en el tiempo o época en que la corte hizo su inspección ocular, dicho río tenía una profundidad de una vara aproximadamente en el paso que se utiliza en dicho camino.

"Examinado por la corte el camino que saliendo de los establecimientos de la hacienda San Carlos del demandante, atraviesa por la hacienda Paz de los demandados, llegó con ayuda de la prueba practicada en el presente caso a las siguientes conclusiones:

"*Primero:* Que este camino es la salida más corta y viable y la única realmente provechosa, practicable y segura que tiene la hacienda San Carlos hasta llegar a la carretera mencionada, siendo el mismo, un camino bastante bueno, con muy pocas pendientes que responde a todos los usos a que se dedican los caminos vecinales en las regiones cafeteras, pudiendo una bestia cargada recorrer el mismo desde los establecimientos de la hacienda San Carlos hasta la carretera en unos treinta minutos aproximadamente.

"*Segundo:* Que el demandante estuvo usando ese camino para extraer las cosechas de la hacienda San Carlos por un período mayor de 20 años sin que el demandado haya podido probar que en ningún tiempo le ocasionara perjuicio alguno a la hacienda Paz el uso de dicho camino por el demandante y sin que probara en ninguna forma que la continuación del uso de dicho camino por el demandante para extraer las cosechas de la hacienda San Carlos habría de producirle daño alguno en el futuro.

"*Tercero:* Que por el contrario, impedirle al demandante el uso de este camino para extraer las cosechas de la hacienda San Carlos negando así la servidumbre solicitada, habría de producirle necesa-

riamente grandes perjuicios hasta el extremo de que perdería gran parte o casi la totalidad de sus frutos menores, privando así también al mercado público de esta ayuda eficiente y por el cual motivo la hacienda San Carlos del demandante quedaría depreciada grandemente.

"*Cuarto:* Que prohibido al demandante el uso de este camino la hacienda San Carlos quedaría aislada de toda vía pública."

Los siguientes son los errores que han sido alegados por los apelantes:

1. "La corte inferior erró al conceder la servidumbre de paso por necesidad fundándose en que la hacienda San Carlos del demandante está aislada de toda vía pública.

2. "La corte inferior erró al tratar sobre el camino vecinal de Río Cañas como si su estado de conservación pueda influir igualmente en la concesión o negativa de la servidumbre.

3. "La corte inferior erró al interpretar el artículo 571 del Código Civil.

4. "La corte inferior erró al no declarar que el camino más corto para sacar sus frutos de su finca el demandante es el que conduce al camino público de Río Cañas.

5. "La corte inferior erró al dictar sentencia constituyendo sobre la hacienda Paz una servidumbre de paso ilimitada y señalando como indemnización lo que costaría arreglar el camino anualmente."

Admiten los apelantes que en el primer señalamiento de error se levanta la cuestión fundamental. Sin embargo, en la discusión que en dicho señalamiento se hace, se prescinde por completo de la conclusión de que el demandante no tiene derecho de paso por los terrenos situados entre la hacienda "San Carlos" y el camino de Río Cañas, y se asume implícitamente que la existencia de tales predios intermediarios para nada se relaciona con la cuestión del aislamiento. No se cita ninguna autoridad para demostrar, ni se insiste expresamente en el hecho de que el dueño de una finca aislada no puede exigir una salida por los terrenos de ninguno de sus vecinos, como no sea por aquella cuya propiedad da acceso al camino público más cercano, prescindiendo de toda consideración de conveniencia relativa, valor y necesidad de

tal salida, considerada a la luz de las necesidades de la finca aislada, teniendo en cuenta su situación con relación al mercado y a otros medios posibles de comunicación con el mismo. Tal sería, sin embargo, el resultado práctico de la teoría de los apelantes, de prevalecer en el presente caso.

El razonamiento que se hace en el segundo, tercero y cuarto señalamiento de error, en gran parte no es sino una modificación y en cierto modo un estudio más acabado del razonamiento contenido en el primer señalamiento de error. Tal vez la corte incluyó si no en sus conclusiones, por lo menos en una relación de hechos por separado, según aparecía de la inspección ocular que hizo de los dos caminos en cuestión y de las fincas que atravesaban, más de lo necesario para sostener la sentencia. Lo mismo puede decirse de las varias consideraciones a que se alude, en apoyo de la conclusión a que llegó sobre los méritos. Tal error, de haberse cometido, no era perjudicial y el razonamiento en su mayor parte se refiere a detalles como este. Los artículos 571 y 572 del Código Civil, equivalentes a los 564 y 565 del Código Español, prescriben lo siguiente:

"Artículo 571.—El propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización.

"Si esta servidumbre se constituye de manera que pueda ser continuo su uso para todas las necesidades del predio dominante estableciendo una vía permanente, la indemnización consistirá en el valor del terreno que se ocupe y en el importe de los perjuicios que se causen en el predio sirviente.

"Cuando se limite al paso necesario para el cultivo de la finca enclavada entre otras y para la extracción de sus cosechas a través del predio sirviente, sin vía permanente, la indemnización consistirá en el abono del perjuicio que ocasione este gravamen."

"Artículo 572.—La servidumbre de paso debe darse por el punto menos perjudicial al predio sirviente, y en cuanto fuere conciliable con esta regla, por donde sea menor la distancia del predio dominante al camino público."

Manresa, al tratar de tal servidumbre, en el tomo 4, página 704 de sus Comentarios, dice lo siguiente:

"El fundamento general filosófico de la misma está en la necesidad de condicionar el destino económico de las cosas; un fundo aislado de toda comunicación con una vía pública, resultaría en una condición verdaderamente negativa para la adecuada utilización de sus usos y aprovechamientos."

Y en la página 706 del referido tomo, dice:

"Lo del aislamiento con relación al fin de la servidumbre, no ha de interpretarse de una manera material sino relativa à la necesidad que se quiere satisfacer y no puede ser satisfecha por no haber el acceso conveniente dado la necesidad hacia la vía pública."

Y también dice dicho comentarista en la misma página y tomo:

"¿Cuándo se estimará que un predio no tiene salida a un camino público? Realmente, debe estimarse en esta condición, no sólo el fundo que no la tiene en absoluto, sino también el que no tiene una bastante segura y practicable; un fundo que linda con un camino público mediante un declive o pendiente inabordable, está realmente aislado para el efecto de la servidumbre que se pide por su dueño. Por otro lado, ¿se ha de estimar con el servicio adecuado de acceso a camino público, una finca que por cualquier circunstancia pierde necesariamente la salida a dicho camino en determinada época del año? Conceptuamos, siguiendo en esto el parecer de los autores, (1) que el dueño de una finca en estas condiciones puede pedir servidumbre para todo el año, por ser contraria a la naturaleza de la servidumbre predial esa forma intermitente de su uso. . . . ."

Encontramos asimismo en la página 707 del referido tomo lo siguiente:

"Preguntan algunos si un río que estuviese interpuesto entre una finca y el camino público debe considerarse como condición de aislamiento de aquella. La cuestión se ha debatido por Laurent y ha sido objeto de discusiones encontradas en los tribunales extranjeros— Holanda, Francia, etc. En rigor no cabe resolver la cuestión de plano. Si el río es vadeable cómodamente y sin peligro alguno en

todo tiempo puede no ser un obstáculo que determine imposición de servidumbre.''

Es verdad, como indican los apelantes, que la finca del demandante no colinda con el camino de Río Cañas en un punto en que el acceso a el mismo es imposible; y ni siquiera colinda con él dicha finca, ni está separada del mismo por ningún río que no sea vadeable en ocasiones, o por otro obstáculo intermitente. Pero es asimismo y claramente cierto que estos son simples ejemplos de la infinidad de variadas circunstancias que podrían y pueden prevalecer en determinado caso.

También es cierto, como igualmente han sugerido los apelados, que Manresa en la página 718 del mismo tomo sugiere el hecho de que entre las varias salidas posibles por terrenos poseídos por distintos dueños colindantes debe servir de norma a la corte la misma regla general que prevalece al elegir caminos por la propiedad de un solo dueño, o sea el más corto en distancia a aquel, que cause menos daño. Pero hay algo aquí también en el comentario, examinado en conjunto, que favorece poco a los apelantes:

"El *ideal,* en el establecimiento de esta servidumbre, está, pues, en la *mayor brevedad* y en el daño mínimo. Pero la dificultad está en que esas dos condiciones no siempre concurren paralelamente: la mayor brevedad, puede ocasionar un daño mayor. En este caso, el código impone la solución: el paso deberá establecerse supeditando lo de la brevedad al menor daño. El *esquema,* de la servidumbre de paso debe ser una recta—distancia más corta—entre el camino público y el predio dominante, modificada y adaptada por las exigencias del menos daño posible. Naturalmente corresponde al dueño del predio sirviente oponerse, bien sea al establecimiento de la servidumbre en su fundo, si puede alegar que es menos perjudicial que en el suyo, en otros, o siendo igualmente gravosa, si es por el otro más corto, bien sea al trazado que el del dominante pida, para hacer efectivas las condiciones del establecimiento en el sentido del artículo 565.

"Aún cuando estas condiciones, según decíamos antes, parecen, al tenor del artículo 565, puestas en interés del predio sirviente,

toda vez que se habla de conciliar, lo del camino corto—beneficio del predio sirviente en cuanto al mínimum de ocupación—con su menor perjuicio—se ha de elegir, de dos trazados, el que ocupe terreno menor o el que cause daño menor a la finca; sin embargo, no ha de interpretarse en tal sentido de una manera exclusiva. Por de pronto la servidumbre establecida según el criterio del menor daño, beneficia indirectamente al dueño del dominante, toda vez que cuanto menor es el daño, más corta debe ser la indemnización. Además, es preciso no olvidar que la servidumbre de paso, adaptada a tales condiciones, tiene el dueño del predio dominante derecho a pedirla o a exigirla, en consonancia con las exigencias y conveniencias de su fundo.''

En este caso los demandados no trataron de hacer partes en el pleito a los demás propietarios ni consta, ni siquiera fué alegado que una salida por los terrenos de tales propietarios les causaría menos daños que el que se causaría a los demandados por la servidumbre decretada por la corte inferior. Por el contrario, toda la prueba, así como las conclusiones de la corte sugieren la conclusión contraria, y como ha indicado Manresa en la última de las citas hechas, no solamente la cuestión del camino más corto debe estar subordinada a la de los daños consiguientes, sino que jamás deberán pasar desapercibidos los intereses del predio dominante. Y no encontramos aquí ni en alguna otra parte ninguna autoridad para sostener la proposición de que el dueño de una propiedad situada entre un camino vecinal o municipal y un camino insular no tiene derecho a exigir salida directa a la carretera principal siendo esa la salida más natural y conveniente, simplemente porque podría llegarse al camino secundario por una vía algo más corta y que de llegarse a ella esto proporcionaría al fatigado viajero llegar finalmente a su destino.

Que no se ha establecido ni puede establecerse una regla inflexible y determinada para regular en absoluto cualquier caso que pueda concebirse, que la resolución en cada caso en particular ha de depender en cierto modo de las circunstancias peculiares envueltas; y que el juez sentenciador en

todos los casos después de considerar los hechos a la luz de los principios generales que sirven de fundamento a los preceptos del código, debe dictar aquella sentencia que demanda el sentido común y los intereses de la justicia substancial, es más o menos una conclusión tan terminante como aquella a que pueda llegarse en vista de los comentarios examinados en conjunto. Y esto parece ser en substancia lo que ha hecho la corte inferior.

Como explicación de la forma peculiar de estimar los daños y perjuicios, el juez sentenciador dice lo siguiente:

"En cuanto a la indemnización que debiera pagar el demandante por obtener la servidumbre solicitada, la corte no tiene otra prueba ante sí para juzgar el montante de la misma que la declaración del propio demandante, de que en el arreglo de dicho camino se gastaban anualmente la suma de veinte dollars, y no habiendo presentado los demandados prueba alguna para juzgar el montante que debiera recibir por tal indemnización ni prueba alguna de que la servidumbre a favor de la hacienda "San Carlos" habría de causarle perjuicio alguno a la hacienda 'Paz' y no tratándose de abrir un nuevo camino sino de usar el ya existente y que se ha venido usando durante más de veinte años, sin causar perjuicio alguno a la hacienda de los demandados, la corte llegó a la conclusión de que el demandante deberá satisfacer a los demandados la cantidad de veinte dollars anuales por el concepto de gastos de reparación de dicho camino, como indemnización por la servidumbre establecida a favor de la hacienda 'San Carlos' como predio dominante sobre la hacienda 'Paz' de los demandados como predio sirviente."

Se quejan los apelantes de que la apreciación de daños en cuestión es una infracción de lo prescrito en el apartado segundo del artículo 571 *supra*, pero no se ha demostrado que se haya causado algún perjuicio, ni se hizo tampoco ninguna gestión para que la corte inferior modificara su sentencia en cuanto a este particular, lo que pudo haberse hecho abriéndose nuevamente el caso, de haber sido necesario, a fin de que se oyera más prueba sobre este punto. A falta de alguna prueba respecto al valor de los terrenos o a la cuantía de los daños y perjuicios, los demandados no tenían

más derecho que a los daños nominales y aunque la forma en que se han estimado es algo inusitada, nos inclinamos a convenir con la teoría del apelado de que el juez sentenciador fué muy liberal al fijar la cuantía de dichos daños y perjuicios. De todos modos los autos no suministran base alguna para que la sentencia apelada sea modificada por este tribunal de modo que favorezca a los demandados y la cuestión no es de importancia bastante para que estemos justificados en devolver las actuaciones. *De minimis non curat lex.*

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.